Travis N. Barrick, SBN 9257
GALLIAN WELKER
& BECKSTROM, LC
540 E. St. Louis Avenue
Las Vegas, Nevada 89104
Telephone: (702) 892-3500
Facsimile: (702) 386-1946
tbarrick@vegascase.com
*Attorneys for Plaintiff Cassandra Thomas*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

CASSANDRA THOMAS,

Plaintiff,

v.

JAMES G. COX, in his individual and official capacities;
JO GENTRY, in her individual capacity;
JAMES HOLMES, in his individual capacity;
BEEBE CLARK, in her individual capacity;
ROMEO ARANAS, in his individual and official capacities;
DULCE KABATAY, in her individual capacity;
JOHN FAULKNER, in his individual capacity;
BRIAN SANDOVAL, in his official capacity;
BARBARA CEGAVSKE, in her official capacity;
ADAM LAXALT, in his official capacity;
JAMES DZURENDA, in his official capacity;
CHRISTOPHER W. NEHLS, in his individual capacity; and
STATE OF NEVADA, ex rel., BOARD OF PRSION COMMISSIONERS;
STATE OF NEVADA, ex rel., DEPARTMENT OF CORRECTIONS;
JOHN/JANE DOES 1-10, in their individual and official capacities,

Defendants.

Case No. 2:16-cv-00080-JAD-CWH

**SECOND AMENDED CIVIL RIGHTS COMPLAINT PURSUANT TO 42 U.S.C. §1983**

**JURY TRIAL DEMANDED**

Plaintiff Cassandra Thomas ("Ms. Thomas"), by and through her attorneys of the law firm of GALLIAN WELKER & BECKSTROM, LC, and as for her Civil Rights Complaint against Defendants, avers as follows:

**JURISDICTION AND VENUE**

1. At all times relevant herein, Plaintiff Cassandra Thomas was an individual domiciled in Clark County, Nevada.

2. Upon information and belief, Defendant James Cox is and was an individual domiciled in the State of Nevada.

3. Upon information and belief, Defendant Jo Gentry is and was an individual domiciled in the State of Nevada.

4. Upon information and belief, Defendant James Holmes is and was an individual domiciled in the State of Nevada.

5. Upon information and belief, Defendant Beebe Clark is and was an individual domiciled in the State of Nevada.

6. Upon information and belief, Defendant Romeo Aranas is and was an individual domiciled in the State of Nevada.

7. Upon information and belief, Defendant Dulce Kabatay is and was an individual domiciled in the State of Nevada.

8. Upon information and belief, Defendant John Faulkner is and was an individual domiciled in the State of Nevada.

9. Upon information and belief, Defendant Brian Sandoval is and was an individual domiciled in the State of Nevada.

10. Upon information and belief, Defendant Barbara Cegavske is and was an individual domiciled in the State of Nevada.

11. Upon information and belief, Defendant Adam Laxalt is and was an individual domiciled in the State of Nevada.

12. Upon information and belief, Defendant James Dzurenda is and was an individual domiciled in the State of Nevada.

13. Upon information and belief, Defendant Chris Nehls is and was an individual domiciled in the State of Nevada.

14. The acts and omissions of Defendants giving rise to Plaintiff's claims arose in Nevada.

15. This Court has jurisdiction over Plaintiff's claims under 42 U.S.C. §1983, 28 U.S.C. §1343(a)(3), and 28 U.S.C. §1331.

16. Venue over Plaintiff's claims properly lies in this Court under 28 U.S.C. §1391(b).

**GENERAL FACTUAL ALLEGATIONS**

17. Ms. Thomas reasserts and realleges all other allegations of this Complaint and incorporates them herein as if set forth in full.

18. Ms. Thomas is currently, and was at all relevant times herein, an inmate at Florence McClure Women's Correctional Center ("FMWCC") located at 4370 Smiley Rd, Las Vegas, Nevada 89115 and operated by the State of Nevada's Department of Corrections ("NDOC").

19. At all relevant times, Defendant James Cox was acting under color of law in his official capacity as Director of NDOC;

20. At all relevant times, Defendant Jo Gentry was acting under color of law in her individual capacity as warden of FMWCC;

21. At all relevant times, Defendant James Holmes was acting under color of law in his individual capacity as a medical doctor at FMWCC;

22. At all relevant times, Defendant Beebe Clark was acting under color of law in her individual capacity as a nurse at FMWCC;

23. At all relevant times, Defendant Romeo Aranas was acting under color of law in his individual and official capacities as the medical director of NDOC;

24. At all relevant times, Defendant Dulce Kabatay was acting under color of law in her individual capacity as a nurse practitioner at FMWCC;

25. At all relevant times, Defendant John Faulkner was acting under color of law in his individual capacity as director of nursing at FMWCC;

26. At all relevant times, Defendant Brian Sandoval was acting under color of law in his official capacity as a Nevada Prison Commissioner;

27. At all relevant times, Defendant Barbara Cegavske was acting under color of law in her official capacity as a Nevada Prison Commissioner;

28. At all relevant times, Defendant Adam Laxalt was acting under color of law in his official capacity as a Nevada Prison Commissioner.

29. At all relevant times, Defendant James Dzurenda was acting under color of law in his official capacity as Director of NDOC.

30. At all relevant times, Defendant Christopher W. Nehls was acting under color of law in his individual capacity as the Infections Disease Nurse for NDOC.

31. At all relevant times, Defendants John/Jane Does 1-10 were acting under color of law in their individual capacities as members of the NDOC Utilization Review Panel ("URP") and/or NDOC Hepatitis C Panel ("HCP").

**SPECIFIC FACTUAL ALLEGATIONS**

32. On June 13, 2002, while residing in the State of Florida, Ms. Thomas was diagnosed with chronic hepatitis C ("Hep-C") stemming from a liver biopsy that

revealed stage 1-2 fibrosis.

33. Ms. Thomas began receiving Hep-C medical treatment at that time in the form of once per week inteferon/peg-intron injections and ribavirin three times daily.

34. In around July of 2006, Ms. Thomas became incarcerated in the Clark County Detention Center ("CCDC") where she promptly advised medical personnel of her chronic Hep-C condition.

35. In the latter part of 2006/early part of 2007, Ms. Thomas began experiencing serious health conditions such as pain in her right side, itching, nausea, and the vomiting of blood.

36. Ms. Thomas began reporting her conditions to CCDC medical personnel and was eventually transported to University Medical Center ("UMC") where she was examined and kept for 3-4 days for observation purposes.

37. During this period, Ms. Thomas was examined by a Dr. Wahid, a gastroenterologist, who subsequently released Ms. Thomas but referred her to Dr. Kevin D. Prince ("Dr. Prince") for further evaluation of her condition.

38. On August 9, 2007, Ms. Thomas was transported by CCDC officials to UMC where she was examined by Dr. Prince regarding her condition.

39. Dr. Prince ordered a repeat work up, "blood work," on Ms. Thomas and indicated that based on Ms. Thomas' Hep-C history she appeared to be genotype 1A, which would require treatment that would include 48 weeks of therapy with weekly peg-intron injections and daily doses of ribavirin as well as close follow ups and regular blood tests. Dr. Prince further stated that he would discuss the need to re-biopsy with the gastroenterologist.

40. Dr. Prince opined that Ms. Thomas' incarceration in CCDC would likely

complicate her required course of treatment.

41. In her criminal matters, Ms. Thomas' attorneys filed a motion on her behalf with the Eighth Judicial District Court seeking house arrest for Ms. Thomas based on her need for the required course of Hep-C treatment described by Dr. Prince.

42. On October 5, 2007, in considering the matter, the district court denied Ms. Thomas' motion for house arrest but ordered that, based upon Dr. Prince's findings, Ms. Thomas (1) be transported to UMC once per week to see Dr. Prince to receive weekly peg-intron injections, (2) receive a daily dose of ribavirin, which, if she cannot receive in CCDC, she be transported to UMC for said purposes each day, and (3) that she undergo 48 weeks of the above-detailed therapy.

43. Due to her imminent transfer to the Nevada Department of Corrections ("NDOC"), Ms. Thomas was never allowed to begin receiving the course of Hep-C treatment prescribed by Dr. Prince and ordered by the court.

44. In around June/July of 2008, Ms. Thomas was eventually transferred to the care and custody of NDOC where, upon intake, she immediately notified NDOC medical personnel of her Hep-C condition and the court-ordered treatment regimen that had been prescribed by Dr. Prince. Evidence of these facts would have been in the CCDC medical records that were transferred to NDOC along with Ms. Thomas. In addition, Ms. Thomas signed numerous releases for NDOC to obtain her medical records from CCDC, Dr. Prince and UMC. On information and belief, the records from Dr. Prince and UMC were received by the NDOC on or about November 28, 2011.

45. Despite this notice, NDOC medical officials made no efforts to follow the court-ordered Hep-C treatment regimen for Ms. Thomas, and, in fact, did not replace it with any other medically acceptable form of treatment.

46. As the years progressed, and despite Ms. Thomas' inquiries and complaints to FMWCC prison officials regarding her lack of treatment, Ms. Thomas continued to receive no medical treatment whatsoever from NDOC medical officials for her Hep-C condition, including no medications of any kind, no regular checkups or blood tests, no visits to the gastroenterologist (or any other Hep-C specialist), and no repeat biopsies.

47. In around 2014, Ms. Thomas began experiencing serious conditions such as fatigue, pain in her side, nausea, headaches, and itching.

48. In around February of 2014, Ms. Thomas was seen by Defendant Dr. Holmes whom she informed directly of her ailments and her Hep-C history, which included her 2002 Florida diagnosis, and the court-ordered treatment regimen prescribed by Dr. Prince years earlier.

49. Defendant Dr. Holmes merely told Ms. Thomas that she "wasn't sick enough yet" to receive any Hep-C treatment per NDOC policy "unless she had liver cancer."

50. Defendant Holmes therefore did not prescribe Ms. Thomas any form of Hep-C treatment medications whatsoever.

51. According to the NDOC policy[1], adopted in 2015, stated that Ms. Thomas needed an APRI score of at least 2.0 before NDOC would consider any medicinal treatment of her Hep-C condition.

52. Upon Ms. Thomas' information and belief, however, an APRI score of 2.0 or higher would mean that Ms. Thomas would by then have developed cirrhosis, an irreparable liver condition than can be fatal.

[1] The NDOC Policy is understood to be the one promulgated by the Federal Bureau of Prisons, Clinical Practice Guidelines, April 2016, Evaluation and Management of Chronic Hepatitis C Virus (HCV) Infection; http://www.bop.gov/resources/health_care_mngmt.jsp.

53. Medications such as interpheron/peg-intron and ribavirin are for the purpose of preventing the progression of Hep-C to cirrhosis, liver cancer, etc....

54. The NDOC Hep-C treatment policy was promulgated and/or maintained by Defendants Sandoval, Cegavske, Laxalt, Cox, Dzurenda, Aranas, and John/Jane Does 1-10 members of the NDOC Utilization Review Panel ("URP") and/or NDOC Hepatitis C Panel ("HCP") ("The Policy Defendants").

55. The Policy Defendants have not made any valid efforts to update or advance their Hep-C treatment policy to include preventive drugs such as interpheron/peg-intron and ribavirin.

56. Despite well-known breakthroughs in the medical community with regards to treatment and actual cure of Hep-C through drugs such as Harvoni, The Policy Defendants have failed to acknowledge and implement these medical breakthroughs into their Hep-C policy in an effort to keep up with modern, acceptable medical standards for Hep-C treatment and cure.

57. Ms. Thomas, through verbal complaints and various inmate request forms ("kites") and grievances, repeatedly advised Defendants Holmes, Clark, Faulkner, Katabay, and Aranas of her ailments and Hep-C circumstances and of how the disease is causing her pain and negatively affecting her daily activities only to have her requests for treatment repeatedly denied based on NDOC policy.

58. In around April of 2014, Ms. Thomas began submitting letters to various sources such as Donald Hinton ("Mr. Hinton") of the Spartacus Project and Nevada Congressman Joe Heck regarding her lack of Hep-C treatment by NDOC officials.

59. On May 8, 2014, Mr. Hinton responded to Ms. Thomas' correspondence by assuring her, among other things, that he was forwarding her letter to at least two

attorneys, Senators David Parks and Tick Segerblom, the Governor of Nevada, and Sean Wheatley of the Review Journal.

60. On information and belief, Congressman Heck, in response to Ms. Thomas' complaint of no Hep-C treatment, sent correspondence to Defendant Cox inquiring about Ms. Thomas' concerns.

61. On June 19, 2014, Defendant Cox responded to Congressman Heck's inquiry by informing him that he had Defendant Gentry review the Congressman's concerns regarding Ms. Thomas' complaint.

62. In that correspondence, Defendant Cox cites Defendant Gentry, not a medical person, as his sole source for informing Congressman Heck on Ms. Thomas' Hep-C circumstances.

63. Defendant Cox expressed to Congressman Heck NDOC's policy of not testing inmates for the Hep-C virus upon intake and not automatically providing treatment to inmates diagnosed with the Hep-C virus.

64. In a seeming effort to downplay the seriousness of Ms. Thomas' Hep-C condition, Defendant Cox, without citing any medical source, provided Congressman Heck with an array of medical information and conclusions by stating that chronic Hepatitis C may never progress to cirrhosis or cancer and that approximately 10-15% of cases spontaneously clear from the patient.

65. Defendant Cox informed Congressman Heck that NDOC had established a Hep-C panel to decide which inmates receive treatment based on a variety of factors.

66. Defendant Cox informed Congressman Heck that NDOC policy does not consider treatment of Hep-C inmates unless the patient becomes symptomatic (jaundice, loss of appetite, fatigue, and joint and muscle pain).

67. Defendant Cox falsely informed Congressman Heck that Ms. Thomas had not presented such conditions during her stay at NDOC when in fact Ms. Thomas had been verbally complaining and sending kites and grievances to NDOC medical personnel for quite some time complaining of similar conditions and seeking Hep-C treatment.

68. Defendant Cox further falsely informed Congressman Heck that Ms. Thomas' values had been monitored almost quarterly since her 2008 NDOC intake.

69. The truth is there has been no quarterly monitoring of Ms. Thomas' condition, and Ms. Thomas would ordinarily only be seen by FMWCC medical staff regarding her Hep-C condition if she herself made her way to sick call or submitted kites complaining of her condition.

70. Defendant Cox informed Congressman Heck that NDOC would put forward Ms. Thomas for evaluation for treatment but that the evaluation would still not guarantee Ms. Thomas would be an acceptable candidate for Hep-C treatment under NDOC policy. Ms. Thomas was not referred for an Infectious Disease review, until 2016, after the filing of her civil rights complaint, on or about January 13, 2016.

71. On information and belief, sometime in 2016, Ms. Thomas was seen by Defendant Chris Nehls, who refused to put Ms. Thomas forward for treatment for her Hep-C, citing the NDOC protocol.

72. Since initiating this action, Ms. Thomas hired Doctor Marshall Anthony to provide her with an independent, private medical examination of her Hep-C condition.

73. On October 21, 2016, Dr. Anthony conducted the examination at FMWCC and prepared a subsequent report of his professional findings and conclusions, which included a plan for Ms. Thomas' treatment.

74. Dr. Anthony opined that Ms. Thomas should undergo blood testing for CBC,

CMP, PT/INT, hepatitis c viral load, hepatitis c genotype, FIBROspect II, and an MR elastogram (looking for fibrosis), or a liver biopsy.

75. Dr. Anthony opined that Ms. Thomas must be staged prior to treatment and that she should undergo consultation with an independent gastroenterologist or liver specialist.

76. Dr. Anthony opined that, after the above-mentioned tests, Ms. Thomas would likely need treatment over a 12-24-week period with one of the newer anti-hepatitis C drugs, like Harvoni or something similar.

77. Dr. Anthony opined that denial of medicinal treatment for Hep-C would not occur in the local community and that NDOC's current policy of denying such care until possible cirrhosis or liver cancer amounts to substandard medical care.

78. Dr. Anthony opined that the NDOC's policy of not medicinally treating Hep-C until cirrhosis (the end stage of liver disease) is ludicrous because, today, the entire purpose of treating Hep-C, which is totally curable in a substantial number of patients, is to prevent the progression of liver fibrosis that could end in cirrhosis and liver failure, or liver cancer, if not medicinally treated.

79. Dr. Anthony opined that the reachable goal in the medical community today with respect to Hep-C treatment is to avoid progression of the disease to cirrhosis, liver failure, or liver cancer and to cure it with medications.

80. NDOC's policy is merely geared toward monitoring Ms. Thomas' Hep-C condition until it progresses to cirrhosis, liver failure, or liver cancer, conditions which can be fatal.

81. Dr. Anthony opines that in the last 4-5 years there has been significant progress in hepatitis c treatment in the medical community and that NDOC is putting forth

substandard medical care by failing to provide Ms. Thomas with the lifesaving treatments that are currently being administered throughout the medical community.

82. Dr. Anthony left NDOC medical personnel with his recommended prescription for diagnostic testing toward treatment for Ms. Thomas' Hep-C condition.

83. On November 18, 2016, following Dr. Anthony's examination, Defendant Aranas met with Ms. Thomas at FMWCC and personally informed her that he was not going to follow Dr. Anthony's recommendations and would instead continue addressing her condition in line with the NDOC policy of using the cirrhosis-detecting APRI score method.

84. Defendant Aranas informed Ms. Thomas that the test recommendations of Dr. Anthony were too costly and that the URP/HCP panel said no to said tests.

85. Defendant Aranas even went so far as to deny Ms. Thomas' offer to pay for the tests herself.

86. Without the ability to carry out and obtain results of the tests recommended by Dr. Anthony, Ms. Thomas is being prevented by Defendants Aranas and John/Jane Does 1-10 of the NDOC URP/HCP panel from completing her exam with Dr. Anthony and obtaining vital information about the current status and progression of her Hep-C condition.

87. Such circumstances subject Ms. Thomas to delay of medical treatment and further significant harm by her untreated Hep-C condition progressing into incurable and potentially fatal conditions such as cirrhosis, liver disease, or liver cancer.

88. As a result of the overall conduct of the defendants in this case, Ms. Thomas, as of the drafting of this amended complaint, is still being denied any form of medicinal treatment for her potentially curable Hep-C condition which Defendants are well aware

could, and more likely than not will, lead to some form of incurable and fatal liver cancer.

## CAUSES OF ACTION

### COUNT I
***Eighth Amendment and Article 1 §6 of the Nevada Constitution—Deliberate Indifference***

89. Ms. Thomas reasserts and realleges all other allegations of this Complaint and incorporate them herein as if set forth in full.

90. Ms. Thomas was denied and deprived of her right against cruel and unusual punishment under the Eighth Amendment and Article 1 §6 of the Nevada Constitution by Defendants Holmes, Aranas, Kabatay, Faulkner, Clark and Nehls when they exhibited deliberate indifference to Ms. Thomas' serious medical need for medicinal Hep-C treatment by repeatedly denying all of her requests for said treatment.

91. Defendants are well aware that without medicinal treatment, Ms. Thomas' Hep-C disease has the high likelihood to progress into incurable, potentially fatal conditions such as cirrhosis and liver failure, or liver cancer.

### COUNT II
***Eighth Amendment and Article 1 §6 of the Nevada Constitution—Deliberate Indifference***

92. Ms. Thomas reasserts and realleges all other allegations of this Complaint and incorporate them herein as if set forth in full.

93. Ms. Thomas was denied and deprived of her right against cruel and unusual punishment under the Eighth Amendment and Article 1 §6 of the Nevada Constitution by Defendants Cox and Gentry when they falsely communicated to Congressman Joe

Heck that Ms. Thomas had not complained of symptoms such as jaundice, loss of appetite, fatigue, and joint and muscle pain related to her Hep-C condition during her NDOC incarceration and that therefore she has not been evaluated for Hep-C treatment.

94. Defendants Cox and Gentry were well aware that their false and misleading information would likely cause Congressman Heck to cease any efforts in continuing to assist Ms. Thomas in getting treatment for her Hep-C condition, which could result in delay of medical treatment and further significant harm to Ms. Thomas by her Hep-C condition progressing into some form of incurable and potentially fatal cirrhosis, liver disease, or liver cancer.

**COUNT III**

***Eighth Amendment and Article 1 §6 of the Nevada Constitution—Deliberate Indifference***

95. Ms. Thomas reasserts and realleges all other allegations of this Complaint and incorporate them herein as if set forth in full.

96. Ms. Thomas was/is being denied and deprived of her right against cruel and unusual punishment under the Eighth Amendment and Article 1 §6 of the Nevada Constitution by Defendants Cox, Aranas, Dzurenda, Sandoval, Cegavske, Laxalt, and John/Jane Does 1-10 of the URP/HCP panels when they exhibited deliberate indifference to Ms. Thomas' serious medical need by promulgating and/or maintaining a policy of denying Ms. Thomas, and other NDOC Hep-C prisoners, medicinal treatment for her Hep-C condition until it progresses into more serious conditions.

97. Defendants are well aware that without medicinal treatment Ms. Thomas is subject to further and significant harm by her Hep-C condition inevitably progressing into incurable and potentially fatal conditions such as cirrhosis, liver failure, or liver cancer.

98. Defendants are well aware of modern breakthroughs in the medical community with respect to the medicinal treatment of the Hep-C virus with drugs such as interpheron/peg-infron and ribavirin to slow or halt the progression of the disease into incurable and potentially fatal conditions such as cirrhosis, liver failure, or liver cancer. However, Defendants have failed to implement the administering of such preventive drugs, or something similar, into their Hep-C treatment policies in an effort to preserve and save the lives of Ms. Thomas and other NDOC Hep-C prisoners.

99. Defendants are further well aware of modern breakthroughs within the medical community with respect to the actual cure of the Hep-C virus with drugs such as Harvoni, but Defendants have failed to update or modernize their Hep-C treatment policies to include administering such drugs in an effort to preserve and save the lives of Ms. Thomas and other NDOC Hep-C prisoners.

**COUNT IV**

***Eighth Amendment and Article 1 §6 of the Nevada Constitution—Deliberate Indifference***

100. Ms. Thomas reasserts and realleges all other allegations of this Complaint and incorporates them herein as if set forth in full.

101. Ms. Thomas was/is being denied and deprived of her right against cruel and unusual punishment under the Eighth Amendment and Article 1 §6 of the Nevada Constitution by Defendants Aranas and John/Jane Does 1-10 of the NDOC URP/UCP panel when they exhibited deliberate indifference to Ms. Thomas' serious medical need for thorough Hep-C testing by refusing to perform the diagnostic tests recommended by Dr. Anthony and by denying Ms. Thomas' request to pay for said testing herself.

102. Defendants are well aware that Ms. Thomas is unable to complete her exam with Dr. Anthony devoid of the recommended test results and is otherwise prevented from

obtaining vital information regarding the current status and progression of her Hep-C condition.

103. Defendants are further well aware that these circumstances inhibit or delay medical treatment for Ms. Thomas and could result in further significant harm by her untreated Hep-C condition progressing into incurable and potentially fatal conditions such as cirrhosis, liver failure, or liver cancer.

**WHEREFORE**, Ms. Thomas requests judgment against the Defendants as follows:

1. For Declaratory Relief that, by an Order of the Court, the NDOC's current policy of not providing medicinal, preventive treatment for Hep-C inmates, and not providing Hep-C inmates any medicinal treatment whatsoever until an incurable and possibly fatal condition surfaces, amounts to deliberate indifference and is therefore unconstitutional under the Eighth Amendment and Article 1§6 of the Nevada Constitution;
2. For an Injunction ordering Defendants and/or their agents to modify their Hep-C treatment policies to include some form of medicinal treatment geared toward suppressing or halting the progression of the Hep-C virus into conditions such as cirrhosis, liver disease, or liver cancer and/or that are geared toward curing the disease, if such are available by current medical standards;
3. For an Injunction ordering Defendants and/or their agents to perform the Hep-C tests recommended by Dr. Anthony and/or allow Ms. Thomas to pay for said tests herself;
4. For the general damages that Ms. Thomas has suffered, including pain and suffering, emotional distress, impairment and loss of quality of life, in amounts to be proven at trial;

5. For all consequential, incidental and special damages that Ms. Thomas has suffered, in amounts to be proven at trial;
6. For punitive damages, to be proven at trial;
7. Pursuant to NRS 17.1310, prejudgment interest at the legal rate from the date of the filing of Ms. Thomas' complaint until paid;
8. For attorney fees and costs arising available under 42 U.S.C. §1988 and §1997e;
9. For costs incurred and accruing; and
10. For such other and further relief as the Court deems just under the circumstances.

DATED this 14th day of December, 2016.

By: ___/s/ Travis N. Barrick___________
Travis N. Barrick, SBN 9257
GALLIAN WELKER
& BECKSTROM, LC
Attorneys for Plaintiff Cassandra Thomas