UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

Cassandra Thomas,

    Plaintiff

v.

James Cox, et al.,

    Defendants

Case No.: 2:16-cv-00080-JAD-CWH

**Order Granting in Part Defendants' Motion for Partial Summary Judgment**
[ECF No. 59]

    Plaintiff Cassandra Thomas sues various defendants employed by the Nevada Department of Corrections (NDOC), Florence McClure Women's Correctional Center (FMWCC), and the Nevada Board of Prison Commissioners (the Board), alleging that they were deliberately indifferent to her medical needs and that NDOC's Hepatitis C (Hep-C) treatment policy violates the Eighth Amendment. Thomas alleges that Prison Commissioners Brian Sandoval, Barbara Cegavske, and Adam Laxalt, NDOC Director James Dzurenda, former NDOC Director James Cox, Medical Director Romero Aranas, and the Board are responsible for promulgating and maintaining the allegedly unconstitutional policy. Sandoval, Cegavske, Laxalt, Dzurenda, Cox, and the Board move for partial summary judgment, arguing that they are not the proper defendants to implement injunctive relief. They also contend that NDOC's Hep-C policy is constitutional. I grant summary judgment in Cox's favor because he is no longer in a position to implement injunctive relief. I deny it for the other defendants because there is a genuine dispute of fact about the roles each defendant plays in creating, approving, and implementing NDOC medical policies. There are also questions of fact as to whether the Hep-C policy is constitutional, so I deny that portion of the motion, too.

**Background[1]**

    Thomas alleges that the NDOC is denying her requests for Hep-C treatment based on a policy that allows treatment only if she develops cirrhosis, an irreparable liver condition that can

---

[1] Because the summary-judgment motion at issue here addresses only Thomas's claim alleging that the Hep-C policy is unconstitutional, I discuss only the facts that are relevant to that claim.

1

be fatal.  NDOC's Hep-C policy is known as NDOC Medical Directive 219, titled "Treatment of Hepatitis C."[2]  The policy "prioritize[s]" Hep-C treatment for patients with chronic Hep-C that have "advanced hepatic fibrosis/cirrhosis," "Hepatocellular carcinoma" (liver cancer), and certain chronic conditions.[3]  Fibrosis is measured on a scale of 0 to 4, with 3 representing advanced fibrosis, and 4 representing cirrhosis.[4]  A 3 to 4 on the fibrosis scale generally places a patient in a high risk group for rapid fibrosis progression.[5]

There are a variety of tests to measure fibrosis.  A liver biopsy is the best method, but that option is "invasive, resource intensive, and not without risk."[6]  Instead, the NDOC uses an "APRI test" to assess the degree of fibrosis.  If the APRI value is greater than 2.0, that indicates that the patient has cirrhosis of the liver.  If the APRI value is above 1.5 and the patient has other conditions indicative of advanced fibrosis, the patient may be at high risk for fibrosis progression.  NDOC's policy excludes prisoners with chronic Hep-C from receiving treatment if they have an APRI score below 2.0, or below 1.5 when coupled with "other findings suggestive of advanced fibrosis/cirrhosis."[7]  The directive tasks a medical committee with "periodically" evaluating patients for treatment, but it doesn't specify how often Hep-C patients are tested for fibrosis or when treatment plans are reviewed or updated.[8]

For many years, there was no effective treatment for chronic Hep-C.  But between 2011 and 2014, "Direct Acting Antiviral agents" (DAA agents) were developed that can cure 90%-

---

[2] ECF No. 59-1 at 4.

[3] *Id.*

[4] ECF No. 59-4 at 7 (Dr. David Hellenstein's expert report).  I rely on Dr. Hellenstein's report to explain the basics of Hep-C treatment, and only to the extent the report is not disputed by Thomas's expert, Dr. J. Marshall Anthony.

[5] *Id.*

[6] *Id.*

[7] ECF No. 59-1 at 5.

[8] *Id.*

2

94% of patients with Hep-C. DAA agents stop the progression of the disease before a patient develops cirrhosis, cancer, and liver failure.

Thomas has chronic Hep-C. She repeatedly requested treatment from NDOC, but her request was denied because the majority of her APRI test results were lower than 1.5.[9] She alleges that NDOC's repeated denial of treatment, particularly now that there is an effective cure for Hep-C, before her condition progresses is deliberately indifferent to her medical needs, and thus the policy violates the Eighth Amendment. She seeks a declaration that NDOC's Hep-C policy is unconstitutional and an injunction ordering NDOC to modify the policy to include treatment geared toward curing the disease.

The defendants move for summary judgment on Thomas's claim that the NDOC's Hep-C policy is unconstitutional. They argue that they are not the proper defendants because they don't have the authority to issue the injunctive relief that Thomas seeks. Rather, they maintain that Medical Director Aranas is the only person at NDOC who has the authority to change the Hep-C policy. The defendants also contend that the Hep-C policy is constitutional. Because genuine disputes of fact plague both of these arguments, I deny the defendants' motion for summary judgment, with one exception. Former NDOC Director Cox no longer has any control over the policies at NDOC and doesn't have the authority to implement injunctive relief, so I enter summary judgment in his favor on any claims against him.

**Discussion**

Summary judgment is appropriate when the pleadings and admissible evidence "show[] that is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[2] If reasonable minds could differ

---

[9] In February 2014, testing revealed a 1.52 APRI score, but by August, testing revealed improvement and a lower APRI score. *See* ECF No. 59-4 at 5.

[1] FED. R. CIV. P. 56(a)).

[2] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

3

on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[3]

If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[4] The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"; she "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in her favor.[5] The court only considers properly authenticated, admissible evidence in deciding a motion for summary judgment.[6]

**A.    Proper defendants for injunctive relief**

The defendants who brought this summary-judgment motion are sued in only their official capacities. Official-capacity suits "represent only another way of pleading an action against an entity of which an officer is an agent"[10] and "therefore should be treated as a suit against the State."[11] "A plaintiff seeking injunctive relief against the State is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation."[12] "Rather, a plaintiff need only identify the law or policy challenged as

---

[3] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[5] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson,* 477 U.S. at 248–49.

[6] FED. R. CIV. P. 56(c); *Orr*, 285 F.3d at 773–74.

[10] *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

[11] *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

[12] *Hartman v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1117 (9th Cir. 2013); *see also Colwell v. Bannister*, 763 F.3d 1060, 1070 (9th Cir. 2014) (holding that NDOC Director was proper defendant in the plaintiff's claim for injunctive relief despite lack of personal participation in denial of medical treatment); *Pouncil v. Titlon*, 704 F.3d 568, 576 (9th Cir. 2012) (finding that the secretary of a state prison system is the proper defendant for injunctive relief "because he would be responsible for ensuring that injunctive relief was carried out").

4

a constitutional violation and name the official within the entity who can appropriately respond to injunctive relief."[13]

The defendants contend that they cannot appropriately respond to injunctive relief so they are not the right targets for these claims. They point to various statutes and administrative regulations that delineate authority within the prison to contend that Aranas is the one with sole discretion over medical directives.

The Board of Prison Commissioners was established by the Nevada Constitution and is responsible for the "supervision of all matters connected with the State Prison as may be provided by law."[14] Nevada Revised Statute 209.111(3) gives the Board the authority to "[p]rescibe regulations for carrying on business of the Board and the [NDOC]." The Board delegates some of its authority to the NDOC Director, who is responsible for establishing standards for the "medical and dental services of each institution or facility" with the approval of the Board.[15] The NDOC Director then delegates authority for the formulation of medical policies to the NDOC Medical Director. "The [NDOC] Medical Director is responsible for the formulation of health policy regarding the health care delivery system, including developing and monitoring standards and procedures for health care services for all inmates confined within the facilities."[16] The NDOC's medical division is responsible for developing medical directives and programs related to infectious disease management.[17] "The [NDOC] Director is responsible for the oversight of the Medical Division."[18]

The defendants contend that this chain of command means that only the Medical Director is responsible for medical treatment policies at NDOC. They start with Prison Commissioners

---

[13] *Id.*

[14] Nev. Const. Art. 5 § 21.

[15] Nev. Rev. Stat. § 209.381(2).

[16] ECF No. 59-2 (NDOC Administrative Regulation (AR) 600).

[17] ECF No. 60 at 22 (AR 621).

[18] *Id.* The defendants attached an outdated version of this policy that did not include the oversight language quoted here. *See* ECF No. 59-3.

5

Sandoval, Cegavske, and Laxalt. Although § 209.381(2) delegates the authority to establish medical regulations to the Director only with approval of the Board, the defendants contend that "the Board's approval . . . only arises upon the receipt of a proposal to change the regulations by the Director."[19] They point to no evidence or authority for that contention. And even if the Board only approved policies after the Director proposed them, that doesn't change the fact that the Board must approve the Director's proposed changes. If, for example, I were to grant injunctive relief in this case and order that the Hep-C policy be changed to require treatment for all affected prisoners, it is unclear why such a policy wouldn't be subject to approval by the Board.

The defendants attempt to answer that question by showing that the Director has delegated the creation of policies concerning infectious diseases to the Medical Director. They contend that because the Medical Director is in charge of formulating medical directives, including the Hep-C policy, he should be the only official-capacity defendant subject to the court's jurisdiction in this case. But the very regulation that the defendants cite to make this argument includes the caveat that the medical division is subject to the Director's oversight. The defendants don't provide any evidence showing what that oversight entails or how much control the Director exercises over the creation of state-wide policies that could affect a significant percentage of prisoners. Nor do they provide affidavits or other evidence from prison officials describing how medical directives are implemented or the process for creating them.

The defendants also argue that the Prison Commissioners and the Director are not medical professionals, and therefore shouldn't be responsible for fashioning injunctive relief concerning proper Hep-C treatment. But Thomas is not asking them to take the first stab at fixing the policy if it is found deficient; they are named in Thomas's complaint to ensure that an injunction, if it is awarded, will be adequately implemented. And at this stage, a genuine dispute of fact remains as to whether an injunction could be resolved by the Medical Director alone. The defendant's own medical expert admits that a primary reason why NDOC doesn't provide

---

[19] ECF No. 59 at 5.

treatment to the large percentage of prisoners who have Hep-C is the prohibitive cost of the new medications.[20] The defendants' evidence doesn't convince me, as a matter of law, that the Medical Director has the unilateral authority to formulate a new, binding Hep-C policy that could affect the entire prison budget without any input or direction from the Director or the Board. So, I cannot determine on this record that an injunction order requiring him to change the Hep-C policy would be adequately addressed. I therefore deny summary judgment as to Sandoval, Laxalt, Cegavske, and Dzurenda.

But the claims against former NDOC Director Cox in his official capacity cannot prevail. The defendants have demonstrated that he no longer has the ability to respond to injunctive relief because he is no longer employed in his capacity as Director. Thomas concedes this argument.[21] So, I grant summary judgment in Cox's favor.

**B.      Issues of fact preclude finding that the policy is unconstitutional at this stage.**

I next address the defendants' argument that the Hep-C policy is constitutional. The defendants cite neither the law governing the contours of the deliberate-indifference-to-serious-medical-needs standard, nor any precedential authority to support their contentions. They rely solely on Dr. Hellenstein's expert report to show that NDOC's Hep-C policy "is consistent with the medical community standards of care."[22] Thomas responds with her own expert, Dr. J. Marshall Anthony, who opines that the NDOC's policy is medically unacceptable and inconsistent with community standards.[23] This battle of the experts is a golden example of a genuine dispute of material fact. The defendants do not contend that they are entitled to

---

[20] See ECF No. 59-4 at 7 (Dr. Hellenstein opines that, if each prisoner with Hep-C received the treatment Thomas requests, it would "use up every penny in the NDOC healthcare budget request for 2017.").

[21] ECF No. 60 at 8.

[22] ECF No. 59.

[23] *See* ECF No. 60 at 19–20, 30–32.

7

judgment as a matter of law despite this factual dispute. And at this summary-judgment stage I will not weight the credibility of these two battling experts—that is a matter for trial.[24]

The defendants cite one unpubished case, *Brown v. Jones*,[25] to support their argument that NDOC's Hep-C policy is constitutionally sufficient. The panel in *Brown* affirmed the district court's grant of summary judgment in favor of the defendants when a pro-se prisoner-plaintiff alleged that they were deliberately indifferent to his medical needs when they failed to provide Hep-C treatment. There, an expert opined that "withholding antiviral therapy did not create any risk of injury, and Brown's relatively normal liver enzyme levels showed the disease was stable and drug treatment was unnecessary."[26] While Dr. Hellenstein's expert report contains opinions similar to those in *Brown*, Thomas's expert disputes Dr. Hellenstein's conclusions and opines that advances in treatment methods—that were developed after *Brown* was decided—have made it medically unacceptable to deny Thomas treatment. So, because genuine disputes of fact exist, I deny summary judgment on the question of the policy's constitutionality.

## C. Board of Prison Commissioners

The defendants also contend that the Board should be dismissed from this case because Thomas "did not allege any claims specifically against the Board."[27] Thomas responds that Sandoval, Cegavske, and Laxalt make up the Board, and that the Board itself has the authority to approve medical policies presented by the NDOC Director. Again, the defendants cannot show that the Board is not responsible for implementing injunctive relief, so I decline to dismiss them at this stage.

---

[24] *Anderson*, 477 U.S. at 255.

[25] *Brown v. Jones*, 171 F. App'x 40, 41 (9th Cir. 2006) (unpublished).

[26] *Id.*

[27] ECF No. 59 at 8.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that the defendants' motion for partial summary judgment **[ECF No. 59] is GRANTED in part and DENIED in part.** The **Clerk of Court** is directed **to ENTER JUDGMENT in defendant James Cox's favor and terminate him from this case**. Thomas's claims against Brian Sandoval, Barbara Cegavske, Adam Laxalt, James Dzurenda, and the Board of Prison Commissioners will proceed.

IT IS FURTHER ORDERED that this case is referred to a magistrate judge for a mandatory settlement conference.

Dated: August 13, 2018

_____
U.S. District Judge Jennifer A. Dorsey